**SO ORDERED.**

**SIGNED this 16th day of April, 2013.**




Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ON-LINE PUBLICATION BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

DANNY MARTIN RICH       ) Case No. 12-10357
MARY BETH RICH          ) Chapter 13

       Debtors.

## ORDER OVERRULING TRUSTEE'S OBJECTION
## TO HOMESTEAD EXEMPTION

Married Kansas debtors are entitled to exempt their homestead from execution by general creditors.[1] The extent of the permitted exemption is measured in acres, not dollars, and a debtor's homestead may have unlimited value . . . until that debtor seeks bankruptcy protection. Then federal law caps the "amount of interest" that the debtor has "acquired" in the homestead within the 1,215

---

[1] KAN. STAT. ANN. § 60-2301 (2012 Supp.).

days preceding the filing at $146,450.[2] But federal law also provides that § 522 "shall apply separately" to each debtor in a joint case, subject to certain limitations.[3] Dan and Mary Beth Rich acquired their homestead within the 1,215 days before they filed their joint bankruptcy case. To do so, they allegedly used sale proceeds from their previous homestead, along with funds from Dan's IRA, savings, and the proceeds of construction loans.[4] At the petition date, they considered the home to be worth $509,500 and it was encumbered by $205,868 in secured debt, leaving "equity" of $303,632. The trustee objects to their exemption because their equity exceeds the $146,450 cap. Because the debtors are each entitled to "apply separately" the provisions of § 522 under subsection (m), *each* debtor's homestead interest is capped at $146,450, meaning their total exemption is capped at $292,900. As there is nothing in the record to help me determine how much (if any) of the remaining $10,732 equity was acquired with the proceeds of the debtors' former homestead as § 522(p)(2)(B) provides, the Trustee's objection to their homestead exemption must be overruled.[5]

Jurisdiction

Objections to claimed exemptions are contested, core proceedings under 28 U.S.C. § 157(b)(2)(B) and this Court may exercise subject matter jurisdiction per 28 U.S.C. § 1334 and § 157(a) and (b)(1).

---

[2] 11 U.S.C. § 522(p)(1). Effective April 1, 2013 the dollar amount of the cap increased to $155,675 but because this case was commenced prior to the dollar adjustment, the cap remains at $146,450 for this case. *See* § 104(c).

[3] 11 U.S.C. § 522(m).

[4] Dkt. 45, p. 3.

[5] The chapter 13 trustee appears by her attorney Karin Tollefson. Debtors appear by their counsel William H. Zimmerman, Jr.

-2-

Factual Summary[6]

Dan and Mary Beth Rich filed this joint bankruptcy case on February 24, 2012; October 27, 2008 is 1,215 days prior to filing. They sold their former homestead on Lakeview Road in Hutchinson, Kansas, in October of 2008. In late June of 2009, they purchased land on East 69th Avenue in Hutchinson and built a home there, completing construction in 2010, well within the 1,215 day period. The stipulations state that there remains "a factual issue" about the source of the funds to purchase the land and build the house and the amount of funds from each source.[7] But as this matter was submitted on stipulations and no one requested an evidentiary hearing, the record is now closed, leaving us with no record concerning how much, if any, of what the debtors realized on their old house went into the new one.[8] When they filed this case, they scheduled the home as having a value of $509,500 and as being encumbered by two mortgages with an aggregate balance of $205,868. The parties stipulate that the debtors' equity in the home was $303,632 at the date of filing.

Analysis

*Burden of Proof*

In bankruptcy, a properly-claimed exemption is presumed valid unless a party in interest

---

[6] The parties submitted this contested matter on stipulations, *see* dkt. 40.

[7] Dkt. 40, ¶s 9 and 15.

[8] Section 522(p)(2)(B) creates a safe harbor for calculating the "amount of interest" acquired within the 1,215 day period where the interest is transferred from debtors' previous residence (acquired prior to the 1,215 day period) into the current residence. In other words, the § 522(p)(1) cap does not apply to equity that debtors rollover from a previous residence. *See In re Blair,* 334 B.R. 374 (Bankr. N.D. Tex. 2005); *In re Wayrynen,* 332 B.R. 479 (Bankr. S.D. Fla. 2005); *In re Presto,* 376 B.R. 554 (Bankr. S.D. Tex. 2007).

-3-

objects.[9] As the party objecting to the exemption here, the Trustee bears the "burden of proving that the exemption was not properly claimed."[10] Kansas exemption laws are construed liberally in favor of exemption.[11] Because the parties agreed with each other to submit this matter on stipulations, I regard them as the only facts proven in the case and disregard the additional facts alleged by the Trustee and the debtors in their memoranda.[12]

*Joint Cases, State Law, and the § 522(p) Cap*

Kansas families are permitted to exempt either one acre in town or 160 acres of farming land in the country as their exempt homestead.[13] They must reside on the land so designated.[14] Kansas courts have traditionally concluded that married Kansas debtors and joint tenants are entitled to only one homestead.[15] In general, the bankruptcy courts sitting in Kansas have followed suit. In *In re*

---

[9] Fed. R. Bankr. P. 4003(b).

[10] Fed. R. Bankr. P. 4003(c); *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002). *See also,* Dkt. 23 (Trustee's Objection).

[11] *In re Ginther,* 282 B.R. at 19.

[12] *See* Dkt. 45, pp. 3-4. Moreover, none of the additional facts alleged are supported by an affidavit or other citation to the evidentiary record or exhibits such as real estate closing or settlement statements and bank records to demonstrate the source of funds and amounts transferred. *Id.* at ¶s 5, 6 and 7. The debtors' additional unsupported facts in their brief are similarly undocumented and should be likewise ignored. *See* Dkt. 50, p. 2, ¶s 2 and 3.

[13] KANS. CONST. art. 15, § 9; KAN. STAT. ANN. § 60-2301 (2012 Supp).

[14] Both the constitutional provision and the state statute require the designated property to be "occupied as a residence."

[15] *See Atchison Savings Bank et al. v. Wheeler's Administrator,* 20 Kan. 625 (1878) (The law does not recognize two homesteads for one family.) The Kansas constitutional homestead provision requires the homestead to be occupied as a residence "by the family of the owner." Art. 15, § 9. The Kansas statutory version, on the other hand, requires occupancy "by the owner or by the family of the owner, or by both the owner and family thereof." § 60-2301. *See also, Commerce Bank of Kansas City v. Odell,* 16 Kan. App. 2d 704, 827 P.2d 1205 (1992) (joint

-4-

*Sauer*, I held that married debtors who had separated shortly before filing could not each claim an exempt one acre residence in separate Kansas cities.[16] I relied on the plain language of the homestead act in reaching that conclusion. That statute states –

> *[A]* homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as *a residence* by *the* owner or by *the family of the owner*, or *by both the owner and family thereof*, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, ***.[17]

The statute plainly speaks of there being one homestead ("a homestead," "a residence," etc.). By comparison, other Kansas exemption statutes confer an exemption upon "every" debtor. For example personal property exemptions permit – "*Every* person residing in this state shall have exempt . . . the following articles of personal property . . . ."[18]

The Kansas state courts have long recognized that families are only entitled to one homestead, first doing so in 1878.[19] More recently, the Kansas Court of Appeals held that joint tenants in a 240 acre tract can not each claim one-half of the tract exempt.[20] Relying on the words

---

tenants could claim exempt their interest in only one homestead exemption of 160 acres); *Cole v. Coons,* 162 Kan. 624, 178 P.2d 997 (1947)(Under Kansas law, fact that ownership of property is by co-tenancy does not deny the cotenants the rights to claim a homestead in the property; one cotenant cannot establish homestead to the exclusion of other cotenants).

[16] 403 B.R. 722, 730 (Bankr. D. Kan. 2009).

[17] KAN. STAT. ANN. § 60-2301 (2012 Supp) (Emphasis added).

[18] KAN. STAT. ANN. § 60-2304(a).

[19] *Atchison Sav. Bank v. Wheeler's Adm'r*, *supra*.

[20] *Commerce Bank of Kansas City v. Odell*, *supra. See also Nelson v. Stocking,* 154 Kan. 676, 121 P.2d 215 (1942) (Debtor with one-fourth interest in 281 acres may only claim as exempt one-fourth of 160 acres).

Case 12-10357   Doc# 54   Filed 04/16/13   Page 5 of 10

"to the extent of 160 acres" as contained in the statute, that court concluded that only each cotenant's interest in the 160 acres (or one acre in town) could be claimed exempt.[21]

To be sure, not all judges sitting in Kansas have reached this conclusion. In *In re Hall*, Judge Karlin of this court overruled a chapter 7 trustee's objection to joint debtors' claiming as exempt separate dwellings on a 1.33 acre tract in an incorporated town.[22] She concluded that the Halls had each "legitimately established a separate homestead pursuant to Kansas law because both dwellings qualified as homesteads."[23] The facts in *Hall* differ from the facts in this case: Dan and Mary Beth Rich only inhabit one dwelling and, at Kansas law, even under the *Hall* rule, they are only entitled to claim one homestead.

Bankruptcy law likewise provides for debtors to claim assets exempt from their bankruptcy estates. Section 522 outlines the scope of those exemptions. Section 522(b)(1) provides that "an individual debtor" can exempt either property listed in subsection (b)(2) or (b)(3). Subsection (b)(2) allows an individual debtor to claim exemptions under a comprehensive scheme of so-called "federal exemptions" as listed in § 522(d) while subsection (b)(3) permits the debtor to elect the state law exemptions in his or her state of domicile. Subsection (b)(1) adds the limitation that debtors in joint

---

[21] *Commerce Bank of Kansas City,* 16 Kan. App. 2d at 708.

[22] 395 B.R. 722 (Bankr. D. Kan. 2008).

[23] *Id.* at 731. Judge Karlin limited her decision in *Hall* to its admittedly unusual facts. In that case the married debtors jointly owned a 1.33 acre tract within city limits. Debtors conceded that they were limited to 1 acre and would claim the acre upon which the improvements were located. Two structures were located on the tract – a house occupied by the wife and children and a mobile home occupied by the husband. The husband had lived apart from his family and moved into the mobile home two years prior to filing bankruptcy because a finding of child abuse had prohibited him from residing with his family. The evidence established that the debtors intended to live in these separate residences on a permanent basis, just as they had done for more than two years.

cases must both elect either the state or federal exemptions; one debtor cannot elect state exemptions while the other debtor chooses federal ones.

Section 522(b)(2) allows states to opt out of the federal scheme by not specifically authorizing its citizens to choose it. By enacting KAN. STAT. ANN. § 60-2312(a) (2005), the Kansas legislature has opted out, meaning that Kansans filing bankruptcy cases must use the state law exemptions.[24]

Section 522(m) provides –

(m) Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.

The "limitation in subsection (b)" likely refers to the requirement that joint debtors elect either federal or state exemptions, although some courts and commentators have concluded that this provision is without meaning in cases involving debtors who hail from opt out states. Norton's bankruptcy treatise categorically states that joint debtors claiming state exemptions can't double them where state law does not provide separate exemptions.[25] Collier's treatise counters that joint debtors can each "stack" their exemptions, noting a Circuit split. It references an Eighth Circuit Court of Appeals case, *In re Stevens*, as authority holding that the "limitation in subsection (b)" language was added by Congress to refer to the limitation on spouses claiming different exemption

---

[24] With some exceptions, *see* KAN. STAT. ANN. § 60-2312(b) (Authorizing debtors to claim the federal exemptions that are set out in § 522(d)(10)).

[25] Hon. William L. Norton, Jr. and William L. Norton III, 3 NORTON BANKR. L. & PRAC. § 56:4 (3d ed. 2012).

-7-

schemes in joint cases.[26] That limitation was added to § 522(b) in 1984.[27]

In 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, Congress added § 522(p), ostensibly to stem perceived abuses of state law unlimited homestead exemptions.[28] That provision provides that any "amount of interest" a debtor "acquires" in a homestead in the 1,215 days preceding filing is capped at $146,450.[29] Not counted in this "amount of interest" is any equity that the debtor received from the sale of a prior homestead and transferred into the debtor's current homestead.[30] In the present case, the debtors argue that their homestead cap should be $292,900 because § 522(m) applies the entire section separately to each debtor in a joint case. The Trustee counters that because Kansas state law limits debtors to one homestead, the debtors' argument must fail.

The debtors have the better argument here. While the Kansas Constitution and statute limit married debtors to a single homestead, the only state law limitation is on quantity of land. The debtors don't seek to exempt more than 160 acres, nor do they ask to be permitted to each retain a separate, non-contiguous tract like the debtors in *Sauer*. Instead, they ask to stack the caps imposed upon each of them by § 522(p)(1). This is what § 522(m) contemplates. While § 522(b)(3) avails the

---

[26] Alan N. Resnick and Henry J. Sommer, 4 COLLIER ON BANKRUPTCY ¶ 522.04[5] (16th ed. 2013). *See Stevens v. Pike County Bank (In re Stevens),* 829 F.2d 693 (8th Cir. 1987).

[27] Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. 333, PUB. L. NO. 98-353, § 306.

[28] By § 522(p)(1)'s reference to exemptions elected under "subsection (b)(3)(A)," the exemption cap applies to state law homestead exemptions. Section 522(b)(3)(A) itself provides that state law exemptions are subject to subsection (p).

[29] § 522(p)(1).

[30] § 522(p)(2)(B).

-8-

debtors of an unlimited value Kansas homestead exemption, subsection (p) limits the value of that exemption in bankruptcy.[31] Subsection (m) applies that cap to each of them, meaning that each debtor's share of the homestead is value-capped at $146,450.

The Bankruptcy Appellate Panel for the Tenth Circuit held as much in *In re Nestlen*.[32] In that case, Oklahoma joint debtors were permitted to stack their subsection (p) caps. The panel in that case concluded that § 522(p) is a federal dollar limitation on a state law right that applies to each debtor under subsection (m).[33] As in Kansas, the Oklahoma homestead exemption has unlimited value, but is limited in size to one acre in a city or town and 160 acres in the country.[34] There is no reason to distinguish *Nestlen* from the debtors' case here – each joint debtor is entitled to the dollar value limit of their homestead exemption.[35]

Concluding that the cap applicable to the joint debtors here is $292,900 should not end the inquiry. Even applying the stacked caps, the debtors still have over $10,000 in home equity to which the Trustee or the unsecured creditors might stake a claim. But the Rule 4003(b) allocation of the

---

[31] The value cap imposed by § 522(p)(1) only applies to debtors "electing" state law exemptions. The federal "homestead" exemption contains its own value cap. *See* § 522(d)(1).

[32] *Dykstra Exterior, Inc. v. Nestlen (In re Nestlen),* 441 B.R. 135 (10th Cir. BAP 2010).

[33] *Id.* at 143, concluding that state law is irrelevant to the application of subsection (m) to § 522(p); whether the cap should be doubled for joint debtors by virtue of subsection (m) is a question of federal law.

[34] OKLA. CONST. art. 12, § 1-3; OKLA. STAT. ANN. tit. 31, §§ 1(A)(1) and 2.

[35] *See also, In re Gentile,* 483 B.R. 50 (Bankr. D. Mass. 2012) (Massachusetts homestead exemption was capped by § 522(p)(1) but joint debtors may "stack" the capped exemption under § 522(m)); *In re Rasmussen,* 349 B.R. 747, 758 (Bankr. M.D. Fla. 2006) (As a result of application of § 522(m) to § 522(p), each debtor in joint case may claim the cap amount exempt); *In re Cook,* 460 B.R. 911 (Bankr. N.D. Fla. 2011); 4 COLLIER ON BANKRUPTCY, *supra* at ¶ 522.13[4].

Case 12-10357   Doc# 54   Filed 04/16/13   Page 9 of 10

burden of proof closes the case. The Trustee had the burden to prove that the debtors were not entitled to exempt their homestead's equity. The only stipulated fact concerning the sources of the debtors' homestead equity is that a factual issue remains as to the source or sources of it. In the absence of a stipulation that specifically details how much, if any, of the former homestead's equity, Dan's IRA, and the debtors' other savings contributed to the remaining $10,732 of equity in the new homestead, I cannot determine the "amount of interest" acquired by the debtors during the 1,215 day look back period.[36]

The Trustee's objection to the debtors' exemption of their homestead is therefore OVERRULED.

# # #

---

[36] It is therefore also unnecessary to reach the debtors other argument concerning the exempt character of IRA funds.